IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROFESSIONAL MEDICAL –
SURGICAL SUPPLY, INC., d/b/a
PROFESSIONAL MEDICAL, INC., an
Illinois corporation,

        Plaintiff,

     v.

MISSION POINT MANAGEMENT
SERVICES LLC, a/k/a MISSION
POINT HEALTHCARE SERVICES, a
Michigan Limited Liability Company, *et
al.*,

        Defendants.

No. 1:24-cv-01685
Judge Franklin U. Valderrama

### ORDER

Plaintiff Professional Medical-Surgical Supply, Inc., d/b/a Professional Medical, Inc. (Professional Medical) entered into a price protection contract (the Contract) related to the purchase of medical supplies with Defendant Mission Point Management Services, LLC (Mission Point Management). R. 53, Third Amended Complaint (TAC) ¶ 1. Facilities associated with Mission Point Management (the Mission Point Facilities) also purchased medical supplies from Professional Medical in accordance with the Contract. *Id.* ¶¶ 1–2. Professional Medical sued Mission Point Management and the Mission Point Facilities,[1] alleging that Defendants breached

---

[1]Specifically, Allegan Care Operating Co. LLC d/b/a Ely Manor, Healthbridge, LLC d/b/a Healthbridge Post-Acute Rehab, Bloomingdale Care Operating Co. LLC d/b/a Meadow Woods Nursing & Physical Rehab, Mission Point Of Belding, LLC, Mission Point Of Big Rapids, LLC, Mission Point Of Cedar Springs, LLC, Mission Point Of Detroit, LLC, Mission Point Of Forest Hills, LLC, Mission Point Of Greenville, LLC d/b/a Mission Point Nursing & Physical

the Contract by giving a 90-day termination notice pursuant to the contract, but ceasing to purchase medical supplies from Professional Medical before the expiration of the 90 days, and by refusing to pay outstanding balances for products and equipment they ordered and received. *Id.* ¶¶ 3–4. Defendants Mission Point of Big Rapids, LLC; Mission Point Cedar Springs, LLC; Mission Point of Elmwood, LLC; Mission Point of Forest Hills, LLC; Mission Point of Grandville, LLC; Mission Point of Hancock, LLC; Mission Point of Lamont, LLC; Mission Point of Rosecommon, LLC; and Mission Point of Woodward, LLC (collectively, the SMJ Defendants) move to dismiss the Third Amended Complaint (TAC) under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. R. 145, Mot. Dismiss. Additionally, the SMJ Defendants and Defendants Mission Point of Health Campus of Jackson, LLC; Mission Point of Greenville, LLC; Mission Point of Belding, LLC (collectively, the

---

Rehabilitation Center Of Greenville d/b/a Mission Point Of Greenville VDCU, Mission Point Of Lamont, LLC, St. James Nursing & Physical Rehabilitation Center, Inc. d/b/a St. James Nursing Center, Mission Point Of Elmwood, LLC, Mission Point Of Woodward, LLC, Mission Point Of Hancock, LLC, Mission Point Of Ishpeming, LLC, Mission Point Of Roscommon, LLC, Mission Point Healthcare Holdings, LLC d/b/a Mission Point Nursing And Rehabilitation Center Of Holly, Mission Point Of Grandville, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Grandville d/b/a Mission Point Of Grandville, Mission Point Grand Rapids Holding, LLC d/b/a Mission Point Of Grand Rapids d/b/a Wellbrook Transitional Rehabilitation, Mission Point Health Campus Of Jackson, LLC d/b/a Mission Point Of Jackson, Mission Point Of Warren, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Warren, Mission Point Of Beverly Hills, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Beverly Hills, Mission Point Of Clarkston, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Clarkston, Mission Point Of Clawson, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Clawson, Mission Point Of Clinton Township, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Clinton Township, Mission Point Of Flint, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Flint, Mission Point Of Madison Heights, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Madison Heights, Mission Point Of Superior Woods, LLC d/b/a Mission Point Nursing & Physical Rehabilitation Center Of Superior Woods, and Americana Seniors, LLC d/b/a Americana Seniors Of Davison.

Moving Defendants) move to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Id.* For the reasons that follow, the Moving Defendants' motion to dismiss is granted in part and denied in part.

## Background

Professional Medical entered into a contract with Mission Point Management, pursuant to which Mission Point Management agreed to purchase a minimum of 90% of its medical products and equipment from Professional Medical in exchange for Professional Medical providing price protection, locking in set prices for the three-year term of the contract. TAC ¶ 1; *see* TAC Exh. 1, Contract. Exhibit A to the Contract listed nineteen facilities associated with Mission Point Management. Contract Exh. A. Not all Facility Defendants are listed on Exhibit A to the Contract. *Id.* Throughout 2023, Mission Point Management and the Mission Point Facilities placed orders for medical products and equipment from Professional Medical pursuant to the pricing terms contained in the Contract. TAC ¶ 2. Professional Medical delivered the products and/or equipment to each of the Mission Point Facilities. *Id.* Professional Medical then subsequently forwarded each Mission Point Facility a weekly overview of its outstanding invoices via electronic mail. *Id.*

On July 3, 2023, Mission Point Management gave Professional Medical a 90-day termination notice pursuant to the Contract but ceased purchasing medical supplies from Professional Medical before expiration of the 90-day period. TAC ¶ 3. Mission Point Management and the Mission Point Facilities also refused to pay

outstanding balances for products and equipment they ordered and received, as reflected in invoices. *Id.*

Professional Medical sued Defendants, alleging claims for: breach of contract against Mission Point Management (Count I); breach of contract against the Mission Point Facilities (Count II); breach of contract under the Illinois Uniform Commercial Code (UCC) against the Mission Point Facilities (Count III); and alternatively, unjust enrichment against the Mission Point Facilities (Count IV). The SMJ Defendants move to dismiss Counts II through IV under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and the Moving Defendants move to dismiss Counts II through IV under Rule 12(b)(6) for failure to state a claim. Mot. Dismiss. The Moving Defendants' fully briefed motion is before the Court.

## Legal Standards

### I.    Rule 12(b)(1)

By statute, Congress grants federal courts jurisdiction over two types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those where there is diversity of citizenship and an amount-in-controversy requirement is met, *id.* § 1332(a). *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). District courts have diversity jurisdiction over all actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of a State and citizens . . . of a foreign state . . . ." 28 U.S.C. § 1332(a).

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (cleaned up).[2]

## II. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Subject Matter Jurisdiction

Because "[s]ubject-matter jurisdiction is the first issue in any case," the Court starts there. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). The TAC alleges diversity jurisdiction as the sole basis of federal jurisdiction. TAC ¶ 68. Diversity jurisdiction exists in cases where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). The SMJ Defendants moves to dismiss Professional Medical's claims against them for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that Professional Medical does not meet the amount in controversy requirements for diversity jurisdiction.[3] Mot. Dismiss at 3.

The party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012).

---

[3]The SMJ Defendants do not take issue with the second requirement, diversity of citizenship. *See* Mot. Dismiss.

This burden "is a pleading requirement, not a demand for proof." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). As the SMJ Defendants point out, the TAC alleges amounts in controversy less than $75,000 against each of them.[4] Mot. Dismiss at 3 (citing TAC ¶ 77). According to the SMJ Defendants, Professional Medical cannot aggregate these claims to meet the $75,000 jurisdictional minimum. *Id.* at 3–4 (citing *Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 543 (7th Cir. 2017) ("[I]n ordinary diversity cases the general rule is that the claims of multiple litigants cannot be aggregated to reach the jurisdictional amount in controversy.") (cleaned up); *Travelers Prop. Cas.*, 689 F.3d at 717 ("[T]he anti-aggregation rule applies . . . to [cases] brought by a single plaintiff against multiple defendants.") (cleaned up)). Therefore, argue the SMJ Defendants, the Court should dismiss all claims against them for lack of subject matter jurisdiction.

Predictably, Professional Medical disagrees, arguing that "this is not an issue of aggregation of claims, but rather, an issue of supplemental jurisdiction." R. 163, Resp. at 12. And, from Professional Medical's perspective, the Court has supplemental jurisdiction over its claims against the SMJ Defendants pursuant to 28 U.S.C. § 1367(a). *Id.* at 11.

---

[4]Specifically, the TAC alleges that the SMJ Defendants have outstanding obligations in the following amounts: Mission Point of Woodward, LLC: $47,705.13 (TAC ¶ 77(c)); Mission Point of Elmwood, LLC: $64,478.92 (*id.* ¶ 77(d)); Mission Point of Hancock, LLC: $58,337.48 (*id.* ¶ 77(e)); Mission Point of Roscommon, LLC: $30,896.82 (*id.* ¶ 77(g)); Mission Point of Big Rapids, LLC: $64,199.94 (*id.* ¶ 77 (i)); Mission Point of Cedar Springs, LLC: $62,013.72 (*id.* ¶ 77 (j)); Mission Point of Forest Hills, LLC: $46,991.70 (*id.* ¶ 77 (k)); Mission Point of Lamont, LLC: $29,514.8 (*id.* ¶ 77(m)); Mission Point of Grandville, LLC: $66,951.92 (¶77(bb)).

In reply, the SMJ Defendants retort that Professional Medical engages in only half of the required analysis under Section 1367. R. 168, Reply at 3. That is, Section 1367(b), which is referenced within Section 1367(a), makes clear that federal courts sitting in diversity jurisdiction cannot join, and exercise supplemental jurisdiction over, defendants against whom claims do not independently satisfy the minimum amount-in-controversy requirement. *Id.* (citing *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 555, n. 5 (7th Cir. 2008) (applying 28 U.S.C.A. §§ 1332, 1367(b))). As the SMJ Defendants point out, Federal Rule of Civil Procedure 20 governs the permissive joinder of parties, and states in relevant part that "[p]ersons . . . may be joined in one action as defendants if . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Professional Medical's argument in favor of supplemental jurisdiction, contend the SMJ Defendants, is premised on the permissive joinder of the SMJ Defendants with Mission Point Management based on the similarity of the claims against all Defendants. Reply at 4 (citing Resp. at 12).

Since Professional Medical insists that the Court has supplemental jurisdiction pursuant to Section 1367(a), the Court begins with that statute, which provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

"Claims form part of the same case or controversy when they derive from a common nucleus of operative fact." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682 (7th Cir. 2014) (cleaned up). For example, "supplemental jurisdiction is appropriate when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction." *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018).

Section 1367(b), however, specifies exceptions to § 1367(a) for diversity cases. That is, Section 1367(b) forbids the exercise of supplemental jurisdiction in diversity litigation

> over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b); *see also Stromberg Metal Works v. Press Mechanical*, 77 F.3d 928, 931–32 (7th Cir. 1996).

Here, argues Professional Medical, the Court has original jurisdiction over the contract dispute between Professional Medical and Mission Point Management (Count I), and since that dispute is based on the same contract as Professional Medical's claims against the SMJ Defendants, the claims form part of the same case or controversy, allowing Count I to serve as the "jurisdictional anchor" for Professional Medical's claims against the SMJ Defendants. Resp. at 11–12 (citing, *inter alia Auto Logistics of Atlanta, Inc. v. Auto Driveaway Richmond, LLC*, 2019 WL

3287871, at *2 (N.D. Ill. Jul. 22, 2019) (in determining whether multiple claims form part of the same case or controversy, the question turns on "whether the claims share a common nucleus of operative facts"); *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.,* 882 F. 3d 692, 704 (7th Cir. 2018) (examining a manufacturer's claim and a dealerships' claims based on the same contract before holding that the dealerships' claims fall within the court's "supplemental jurisdiction")).

While the Court agrees with Professional Medical that its claims against all Defendants arise out of a common nucleus of operative facts, as stated above, under the plain language of Section 1367(b), as well as Supreme Court and Seventh Circuit authority, when a court's jurisdiction is premised solely on 28 U.S.C. § 1332, a court "shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560 (2005) ("§ 1367(b) explicitly excludes supplemental jurisdiction over claims against defendants joined under Rule 20."); *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 555 n.5 (7th Cir. 2008) ("We also note that supplemental jurisdiction could not be exercised over LM's claims against Rosetti, because doing so would require that she be joined as a defendant pursuant to FED.R.CIV.P. 20, something explicitly forbidden by 28 U.S.C. § 1367(b) when doing so 'would be inconsistent with' the requirements for diversity jurisdiction under 28 U.S.C. § 1332, which includes

the amount in controversy requirement."). It is worth pointing out that Section 1367(b) prohibits a court from exercising supplemental jurisdiction over *defendants* permissively joined under Rule 20, but does have any such prohibition over *plaintiffs* permissively joined—that is, it only bars a court from exercising supplemental jurisdiction over plaintiffs who are required to be joined under Rule 19. *See Exxon Mobil Corp.*, 545 U.S. at 558–60; *see also Stromberg Metal Works*, 77 F.3d at 932 ("Claims *against* persons made parties under Rule 20 are forbidden, but claims *by* parties who join under Rule 20 are allowed.") (emphases in original).

None of the cases cited by Professional Medical change the analysis. Only two actually address the application of Section 1367(b), but both did so in the context of permissively joined *plaintiffs*, which, as stated above, are not barred from invoking supplemental jurisdiction. Resp. at 12 (citing *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.,* 882 F.3d 692, 704 (7th Cir. 2018); *Stromberg Metal Works*, 77 F.3d at 932).

The rest of the cases cited by Professional Medical do not address application of Section 1367(b). For example, *Auto Logistics of Atlanta, Inc. v. Auto Driveaway Richmond, LLC*, addressed whether it had supplemental jurisdiction over additional plaintiffs' claims, finding that, as pled it was impossible to determine whether the claims shared a common nucleus of operative fact under Section 1367(a), and dismissed the underlying claim for failure to state a claim. 2019 WL 3287871, at *2–4 (N.D. Ill. July 22, 2019). Similarly, in *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, the Seventh Circuit analyzed only whether all plaintiffs' claims

11

shared a common nucleus of operative facts under Section 1367(a). 891 F.3d 256, 257–59 (7th Cir. 2018). And *McCoy v. Iberdola Renewables, Inc.,* 760 F. 3d 674, 680–81 (7th Cir. 2014) and *Browner v. American Eagle Bank,* 2019 WL 10378333, at *2 (N.D. Ill. Nov. 22, 2019) both involved underlying claims with federal question jurisdiction under Section 1331, meaning Section 1337(b) could not have been at issue. *Clark v. McDonald's Corp.* is even more inapposite, as it addressed pendant *personal* jurisdiction, not subject matter jurisdiction. 2023 WL 2648467, at *5–6 (S.D. Ill. Mar. 27, 2023)

Therefore, the Court finds that it lacks subject matter jurisdiction over the SMJ Defendants and grants the motion to dismiss under Rule 12(b)(1). Professional Medical's claims against the SMJ Defendants are dismissed without prejudice.

Because the Court has an independent obligation to ensure that it has subject matter jurisdiction, *Foster v. Hill*, 497 F.3d 695, 696–697 (7th Cir. 2007), it examines Professional Medical's allegations against the non-moving Defendants to determine whether it has subject matter jurisdiction over them. There are nine remaining Defendants where Professional Medical alleges amounts in controversy of less than $75,000: St. James Nursing & Physical Rehabilitation Center, Inc. d/b/a St. James Nursing Center: $58,980.32 (TAC ¶ 77(a)); Mission Point of Detroit, LLC: $39,410.23 (*id.* ¶ 77(b)); Mission Point Of Ishpeming, LLC: $55,488.11 (*id.* ¶ 77(f)); Bloomingdale Care Operating Co. LLC d/b/a Meadow Woods Nursing & Physical Rehab: $50,080.80 (*id.* ¶ 77(p)); Mission Point of Holly: $50,324.85 (*id.* ¶ 77(q)); Mission Point of Grand Rapids Holdings, LLC: $1,015.16 while doing business as Mission Point of Grand

Rapids, and $59,228.11 while doing business as Wellbrook Transitional Rehabilitation (*id.* ¶ 77(r)); Mission Point of Beverly Hills: $53,817.54 (*id.* ¶ 77(u)); Mission Point of Clarkston: $58,257.87 (*id.* ¶ 77(v)); and Americana Seniors, LLC d/b/a Americana Seniors Of Davison: $232.13 (*id.* ¶ 77(cc)).[5] The foregoing Defendants are also dismissed without prejudice for lack of subject matter jurisdiction.

## II.    Failure to State a Claim

As stated above, three of the Moving Defendants, Mission Point of Health Campus of Jackson, LLC; Mission Point of Greenville, LLC; Mission Point of Belding, LLC,[6] do not argue that the Court lacks subject matter jurisdiction over them. Therefore, the Court addresses the Moving Defendants' arguments as to the sufficiency of Professional Medical's claims against them, starting with the breach of contract claim.

### A. Breach of Contract

In Count II, Professional Medical brings a breach of contract claim against the Facility Defendants, alleging that they violated the Contract by not paying the past

---

[5]Professional Medical alleges that Defendant Mission Point of Clawson ordered and received medical products and/or equipment from Professional Medical totaling $74,988.27. TAC ¶ 77(w). The Court is not convinced, especially without briefing from either party on the issue, that that allegation, combined with Professional Medical's allegations that all Defendants refused to continue purchasing 90% of their medical products and equipment for three months following the notice of termination, *id.* ¶¶ 78–79, does not exceed $75,000.

[6]The Court refers to these three Defendants as the "Moving Defendants" in this Section; however, the Court only considers the Rule 12(b)(6) arguments as to the remaining three Defendants over which it has subject matter jurisdiction, rather than all Defendants that filed the motion to dismiss.

due amounts owed for medical supplies they received, as well as by failing to purchase 90% of their medical products and equipment from Professional Medical between the termination notice on July 3, 2023 and October 1, 2023. TAC ¶¶ 87–98. According to Professional Medical, Mission Point Management entered into the Contract on behalf of itself and the Facility Defendants as their agent and representative. *Id.* ¶ 88.

The Moving Defendants argue that the Court must dismiss Professional Medical's breach of contract claim because the Facility Defendants are not parties to the Contract. Mot. Dismiss at 4. The Contract, which is attached to the TAC, point out Moving Defendants, is between Professional Medical and Mission Point Management, referred to as the "Participating Customer," and the Contract's payment obligations refer only to the "Participating Customer," with no suggestion that the Facility Defendants are responsible for payments to Professional Medical. Mot. Dismiss at 4 (citing Contract at 1–2). Therefore, posit Moving Defendants, Professional Medical's attempt to hold them liable under the Contract as non-parties and non-signatories is contrary to Illinois law. *Id.* at 5 (citing, *inter alia*, *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993); *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 150 (Ill. App. Ct. 2000)).[7]

Moreover, argue the Moving Defendants, Professional Medical's allegations regarding an agency relationship between Mission Point Management and the Facility Defendants fail because they are conclusory, which is insufficient to establish

---

[7] Both parties apply Illinois law, as does the Court. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (where federal jurisdiction is based on diversity of citizenship, courts apply the substantive law of the forum state).

such a relationship even at the pleading stage. Mot. Dismiss at 5–6 (citing, *inter alia*, *Cmty. Ass'n Underwriters of Am., Inc. v. Constr. Sys. Corp. of Illinois*, 638 F. Supp. 3d 872, 879 (N.D. Ill. 2022)). And, Professional Medical's allegation that Mission Point Management terminated the Contract on behalf of itself and on behalf of the Facility Defendants is belied by the Termination Notice itself, attached to the TAC, and therefore, contend the Moving Defendants, the exhibit controls. *Id.* at 6 (citing FAC, Exh. 3, Term. Notice; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.")). Finally, the Moving Defendants urge the Court to disregard Professional Medical's allegation that, "[t]hroughout the course of their relationship and business dealings, the parties mutually agreed to amend the [Contract] to include twelve additional Mission Point Facilities that were not initially named in Exhibit A of the [Contract]." *Id.* at 6. Not only is this allegation conclusory, argue the Moving Defendants, but it also contradicts the Contract's requirement that "[n]o terms, conditions agreements or undertakings other than those stated in this Agreement will be binding on either party unless they are in writing and signed by the authorized representatives of both parties." *Id.* at 6–7 (citing Contract at 5).

Professional Medical responds that it adequately pled that Mission Point Management acted as an authorized agent on behalf of the Facility Defendants. R. Resp. at 4. From Professional Medicals view, Mission Point Management acted with

15

both actual and apparent authority to bind the Facility Defendants to the Contract. *Id.* at 4–5.

The Moving Defendants reply that no apparent agency relationship exists because "[o]nly the words and conduct of the alleged principal, not the alleged agent, establish the authority of an agent," and here, Professional Medical does not allege that they, as they alleged principals—as opposed to Mission Point Management, the alleged agent—said or did anything to create the impression of apparent authority. Reply at 8 (quoting *C.A.M. Affiliates, Inc. v. First AM. Title Ins. Co.*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999) and citing, *inter alia*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 778 (N.D. Ill. 2014)).

Under Illinois law, an agent's authority to bind a principal can be either actual or apparent. *Azuz v. Accucom Corp.*, 2023 WL 2525486, at *7 (N.D. Ill. Mar. 15, 2023). Actual agency may be express or implied. *Buckholtz v. MacNeal Hosp.*, 785 N.E.2d 162, 170 (Ill. App. Ct. 2003). Express authority is actual authority granted explicitly by the principal to the agent; implied authority is actual authority proved circumstantially by evidence of the agent's position. *Amcore Bank, N.A. v. Hahnaman–Albrecht, Inc.*, 326 Ill. App. 3d 126, 135–37 (Ill. App. Ct. 2001); *see also Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 233 (Ill. App. Ct. 2010) (Implied authority is actual authority established through circumstantial evidence, and "arises when the conduct of the principal, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's behalf.").

16

Apparent authority, on the other hand, is the authority which the principal "knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993). "Where parties silently stand by and permit an agent to act in their behalf in dealing with another in a situation where the agent may be presumed to have authority, the parties are estopped from denying the agent's apparent authority as to third persons." *Mateyka v. Schroeder*, 504 N.E.2d 1289, 1295 (Ill. App. Ct. 1987).

The Court starts with apparent authority. Professional Medical argues that the Facility "Defendants held Mission Point Management Services out as their apparent agent to sign the Contract and bind them to the purchase obligations each Defendant was obligated to, and did, perform." Resp. at 6. Moreover, according to Professional Medical, it relied upon the appearance of authority to its own detriment, in that it sold equipment and products to the Facility Defendants at the price pursuant to the Contract. *Id.* at 4, 8.

As an initial matter, despite the TAC explicitly alleging that "Mission Point Management had, and exercised, apparent authority to enter into the Contract on behalf of the Mission Point Facilities," TAC ¶ 93, the Moving Defendants did not attack apparent authority in their opening motion to dismiss, instead focusing on actual authority, Mot. Dismiss at 5–6. They therefore waived any argument about the sufficiency of an apparent agency relationship. *See United States v. Desotell*, 929

17

F.3d 821, 826 (7th Cir. 2019) ("In most instances, litigants waive any arguments they make for the first time in a reply brief.") (citing *Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012); *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011)).

Waiver aside, the Court agrees with Professional Medical that, at this stage, it has sufficiently pled the existence of apparent authority. True, the TAC does not allege representations made by the Facility Defendants; however, it alleges that the Mission Point Facilities "purchased medical products and equipment subject to the price protection" and attaches their Customer Statements reflecting some of those orders. FAC ¶ 74; FAC at Exh. 2. And, as Professional Medical argues, courts "have frequently recognized the fact-sensitive nature of apparent authority in commercial settings." Resp. at 6 (citing, *inter alia*, *CommSolvers LLC v. Wieland N. Am., Inc.*, 2025 WL 786330, at *9 (S.D. Ill. Mar. 12, 2025); *Loncarevic & Assocs., Inc. v. Stanley Foam Corp.*, 72 N.E.3d 798, 806–07 (Ill. App. Ct. 2017); *Mateyka*, 504 N.E.2d at 1294)). By taking advantage of the price protection and purchasing 90% of their products and equipment from Professional Medical in accordance with the Contract, the Facility Defendants' conduct "would reasonably lead an ordinarily prudent person to believe that [Mission Point Management] was acting on behalf of all the defendants."[8] *Mateyka*, 504 N.E.2d at 1295. "The general rule is that parties cannot repudiate acts of another done on their behalf and at the same time accept the fruits and benefits of those acts unless, within a reasonable time after learning that the

---

[8]This applies both to the Facility Defendants on Exhibit A to the Contract and those alleged to have been added through the course of the parties' relationship and business dealings. TAC ¶ 89.

acts of the other were unauthorized, they return the benefits." *Id.* Accordingly, at this stage, the Court finds that Professional Medical has adequately pled that Mission Point Management acted with apparent authority to bind the Facility Defendants to the Contract.

Because the Court finds that Professional Medical has adequately pled apparent agency and therefore Count II survives the motion to dismiss, the Court need not determine whether Professional Medical has adequately pled actual authority, Resp. at 5, nor whether a contract existed between Professional Medical and the Facility Defendants in the absence of an agency relationship, *see id.* at 7–9.

### B. Breach of Contract Under the Uniform Commercial Code

In Count III, Professional Medical alleges a breach of contract claim against the Facility Defendants under the UCC. TAC ¶¶ 99–109. Specifically, Professional Medical, the Facility Defendants "order(s) to buy medical products and equipment invited acceptance of a contract by Professional Medical, which it did, when it agreed to ship, and did ship, conforming goods, all in accordance with 810 ILCS 5/2-206(1)(b)." *Id.* ¶ 106. Indeed, alleges Professional Medical, "the conduct and established practices of the [Facility Defendants] and Professional Medical establish the existence of contracts for sale in accordance with 810 ILCS 5/2 -207(3)." *Id.* ¶ 107. The Facility Defendnats breached these contracts when they refused to pay for products and equipment provided by Professional Medical. *Id.* ¶ 109.

The Moving Defendants argue that the TAC ignores Section 2-204 of the UCC, which states that "[a] contract for sale of goods may be made in any manner sufficient

to show agreement, including conduct by both parties which recognizes the existence of such a contract." Mot. Dismiss at 7 (quoting 810 ILCS 5/2-204(1)). Citing no cases in support, the Moving Defendants maintain that Professional Medical fails to plead that the Facility Defendants recognized the existence of any contract between Professional Medical and themselves apart from the Contract between Professional Medical and Mission Point Management. *Id.* The way the Moving Defendants see it, Professional Medical's "allegation that [the Facility] Defendants placed and received orders from [Professional Medical] does not show the existence of contracts between [the Facility] Defendants and [Professional Medical] when the . . . Agreement itself contemplated precisely that arrangement by listing [the Facility] Defendants (or some of them) as 'facilities' that would receive goods." *Id.* at 7–8.

Professional Medical counters that, although the Contract provided price protection and an obligation to purchase, numerous specifics, such as "the specific quantities of supplies or products, the number of purchases to be made, the place of delivery for the supplies/products, etc." are not included in the Contract. Resp. at 9. Therefore, the individual purchase orders, invoices, and other papers formed the UCC contracts that subject the Facility Defendants to liability. *Id.* And, Professional Medical argues that the conduct of both parties, including the Facility Defendants' orders and Professional Medical's fulfillment of those orders, show the parties' agreement to enter into a contract under Section 2-204. *Id.*

Without any supporting authority from the Moving Defendants, the Court finds that they have waived the argument. *See White v. United States*, 8 F.4th 547,

20

552 (7th Cir. 2021) ("[A]rguments that are unsupported by pertinent authority, are waived."). Therefore, without more from the Moving Defendants, the Court finds that Professional Medical's breach of contract claim under the UCC survives the motion to dismiss.

### C. Unjust Enrichment

Finally, in Count IV, Professional Medical pleads a claim of unjust enrichment against the Facility Defendants in the alternative. TAC ¶¶ 110–114. "To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Banco Panamericano, Inc. v. City of Peoria, Ill.*, 880 F.3d 329, 333 (7th Cir. 2018) (cleaned up). It is well settled that a plaintiff may not recover under an unjust enrichment theory when a contract governs the relationship between the parties. *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022). However, a plaintiff "may plead breach of contract and unjust enrichment claims in the alternative." *Id.* at 887.

Professional Medical alleges that it conferred a benefit on each Facility Defendant by providing them with the medical products and equipment they ordered, and it would be inequitable and unjust for the Facility Defendants to retain those benefits without just compensation to Professional Medical. TAC ¶¶ 111–113.

The only argument advanced by Moving Defendants is that the unjust enrichment claim must be dismissed because "'[i]t is well-established law in this

jurisdiction that where work is done under a contract, the suit must be between the parties to the agreement; third parties are not liable on the basis of an implied undertaking even if they are benefited by the work.'" Mot. Dismiss at 8 (quoting *Daley v. G'Sell*, 430 N.E.2d 556, 559 (Ill. App. Ct. 1981) and citing *Klesman & Associates, Inc. v. Weatherco, Inc.,* 92 F. Supp. 2d 765, 768 (N.D. Ill. 2000)).

Here, as discussed above, the TAC plausibly alleges that Facility Defendants are not merely third parties to the Contract, but rather are parties to it pursuant to the doctrine of apparent authority. *See supra* Section II.A. Therefore, the Court finds that Professional Medical has properly pled its unjust enrichment claim in the alternative.

## Conclusion

For the reasons stated in this Order, the Court grants in part and denies in part the Moving Defendants' motion to dismiss. R. 145. The Court dismisses Counts II–IV without prejudice for lack of subject matter jurisdiction against the following Defendants: Defendants Mission Point of Big Rapids, LLC; Mission Point Cedar Springs, LLC; Mission Point of Elmwood, LLC; Mission Point of Forest Hills, LLC; Mission Point of Grandville, LLC; Mission Point of Hancock, LLC; Mission Point of Lamont, LLC; Mission Point of Rosecommon, LLC; Mission Point of Woodward, LLC; St. James Nursing & Physical Rehabilitation Center, Inc. d/b/a St. James Nursing Center; Mission Point of Detroit, LLC; Mission Point Of Ishpeming, LLC; Bloomingdale Care Operating Co. LLC d/b/a Meadow Woods Nursing & Physical Rehab; Mission Point of Holly; Mission Point of Grand Rapids Holdings, LLC:

$1,015.16 doing business as Mission Point of Grand Rapids and Wellbrook Transitional Rehabilitation; Mission Point of Beverly Hills; Mission Point of Clarkston; and Americana Seniors, LLC d/b/a Americana Seniors Of Davison. The Court denies the motion to dismiss Counts II–IV for failure to state a claim against Defendants Mission Point of Health Campus of Jackson, LLC; Mission Point of Greenville, LLC; and Mission Point of Belding, LLC. Defendants Mission Point of Health Campus of Jackson, LLC; Mission Point of Greenville, LLC; and Mission Point of Belding, LLC are directed to file an answer to the TAC on or before December 5, 2025.

Dated: November 19, 2025

_____
Franklin U. Valderrama
United States District Judge